UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROMAN VANOVSKYI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00271-JRS-MKK |
| | ) | |
| MARKWAYNE MULLIN Secretary, U.S | ) | |
| Department of Homeland Security, | ) | |
| TODD BLANCHE Acting Attorney General, U.S. | ) | |
| Department of Justice, | ) | |
| SAMUEL OLSON Field Office Director, Chicago | ) | |
| Field Office, Immigration and Customs | ) | |
| Enforcement, | ) | |
| BRISON SWEARINGEN Clay County Sheriff, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Roman Vanovskyi is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials on March 31, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Mr. Vanovskyi now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody. Dkt. 1 at 19.

For the reasons explained below, the Court grants the petition to the extent that no later than **5:00 p.m. on May 6, 2026**, Respondents must either: (1) afford Mr. Vanovskyi an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Vanovskyi from custody, under reasonable conditions of supervision.

## I.    Background

Mr. Vanovskyi is a Ukrainian citizen who entered the United States in June 2023 and was issued a travel document through the Uniting for Ukraine (U4U) humanitarian program and, later,

1

received parole until June 23, 2025, as reflected on his I-94 Form. Dkt. 1-1 at 2; dkt. 7-1 at 18. He was arrested on March 31, 2026, pursuant to an I-200 administrative warrant issued by the Department of Homeland Security (DHS) on the same day. *Id.* at 5. On April 1, 2026, DHS placed Mr. Vanovskyi in removal proceedings by issuing him a Notice to Appear. *Id.* at 1.

The Notice to Appear charges Mr. Vanovskyi with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for not possessing valid immigration documents. *Id.* at 4. The "arriving alien" checkbox is marked. *Id.* at 1.

## II.    Discussion

Mr. Vanovskyi claims that his current detention violates the Due Process Clause of the Fifth Amendment (Count I) and the Immigration and Nationality Act (INA) (Count II). Dkt. 1 ¶¶ 63–74. Respondents argue that Mr. Vanovskyi's detention does not violate due process and that he is lawfully detained under the INA pursuant to 8 U.S.C. § 1225. Dkt. 7.

The Court finds that Mr. Vanovskyi's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Mr. Vanovskyi is entitled to habeas corpus relief on these grounds, the Court does not address Mr. Vanovskyi's other arguments.

### A.  8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings under 8 U.S.C. § 1229(a), also known as

2

"full removal," are initiated by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [T]he Attorney General—
>
>> (1) may continue to detain the arrested alien; and
>>
>> (2) may release the alien on—
>>
>>> (A) bond . . . ; or
>>>
>>> (B) conditional parole[.]

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall

3

order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B. Mr. Vanovskyi Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Mr. Vanovskyi is eligible for a bond hearing under § 1226(a).

As an initial matter, Respondents assert that Mr. Vanovskyi is subject to § 1225(b)(2)(A) because his parole expired, returning him to the status of "arriving alien." Dkt. 7 at 5.

Respondents rely on two key provisions to support their argument that the expiration of Mr. Vanovskyi's parole subjects him to detention under § 1225(b)(2)(A). First, 8 U.S.C. § 1182(d)(5)(A) provides that, after parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). At no point, however, do Respondents explain how this provision mandates Mr. Vanovskyi's current detention without bond in Clay County Jail. The record shows that, before he was paroled, he had travel

authorization under the U4U program. *See* dkt. 1-1 (granting travel authorization until August 30, 2023). Furthermore, "custody," and "detention" are two different concepts. Interpreting § 1182(d)(5)(A), the court in *Qasemi v. Francis* explained:

> The law and the statute draw a distinction between "detention" and "custody." "Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." Black's Law Dictionary 390 (7th ed. 1999). That contrasts with "detention" or "detain," which Congress uses frequently. When "custody" is intended to denote detention, it is preceded by the modifier "physical," or "in." For example, as the Supreme Court has held, an incarcerated person placed on parole is in the "custody" of the parole board, even if he is not subject to its "actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). "Custody" used alone refers to "restraints on a man's liberty, restraints not shared by the public generally." *Id.*

2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Though *Qasemi* is not binding on this Court, its careful analysis of the key terms is persuasive. By "returning" to custody, Mr. Vanovskyi must relinquish the freedoms that he had under parole (i.e., lawful status, work authorization, public benefits, etc.). It does not mean that he must be detained without bond. Indeed, § 1182(d)(5)(A) does not "affirmatively authoriz[e] detention, much less indefinite detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005).

In other words, after his parole expired, the INA put Mr. Vanovskyi back into the same position that he was in before he was granted parole. Nevertheless, "[t]he statute does not require the Court to pretend that [the petitioner] was never paroled and permitted to live freely in this country." *Qasemi*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Respondents do not cite any language or principle that returns Mr. Vanovskyi to his physical position at the port of entry in Chicago in 2023. "A noncitizen is not reverted by operation of law to status as an arriving alien—

they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.*

This interpretation of "custody" is supported by the rest of the sentence, which provides that the alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). In other words, § 1182(d)(5)(A) suggests that after parole expires, the alien will be treated like any other unadmitted alien under the INA. *See Clark*, 543 U.S. at 386 (interpreting § 1182(d)(5)(A) to subject the alien, who was subject to a final order of removal, to "[t]he manner in which the case of any other applicant would be 'dealt with' beyond the 90–day removal period [under] § 1231(a)(6)").

This statute does not require Respondents to detain Mr. Vanovskyi. Instead of returning him back to his position as an "arriving alien" at the airport in Chicago, the provisions strip him of his parolee status and mandate that he be treated like any other "applicant for admission." Thus, the pertinent question is whether Mr. Vanovskyi's detention is authorized by § 1225(b)(2)(A) or § 1226(a).

The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Vanovskyi who have lived in the interior of the United States for years. *See Morales Sandoval v. Crowley*, No. 2:25-CV-00560-JRS-MKK, 2025 WL 3760760, at *3–6 (S.D. Ind. Dec. 30, 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See, e.g., id.*

6

In *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), a decision that carries persuasive authority due to its procedural posture,[1] the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. 161 F.4th at 1061. This Court has applied those established canons of statutory interpretation in its previous cases and has reached the same conclusion.

The respondents here cite a number of contrary decisions but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 7 at 12. Notably, the respondents cite two recent circuit court decisions upholding the government's interpretation of § 1225(b)(2)(A). Dkt. 7 at 13 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)). The *Buenrostro-Mendez* court found that "seeking admission" is a permissible redundancy for "applicant for admission." 116 F.4th at 503. The *Avila* court similarly held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." 170 F.4th at 1135.

In contrast, after Respondents filed their brief in this matter, the Second Circuit decided *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), explicitly rejecting the government's argument and adopting the reasoning set forth in *Castañon-*

---

[1] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

*Nava*. "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at *4.

The Court is not convinced that the Seventh Circuit will depart from *Castañon-Nava* (and disagree with *Barbosa da Cunha*) to instead follow *Buenrostro-Mendez* or *Avila*. Therefore, the Court continues to rely on *Castañon-Nava* as persuasive precedent.

Accordingly, the Court concludes that Mr. Vanovskyi is entitled to a bond hearing under § 1226, and it declines to reach his other arguments.

### III.    Scope of Relief

Mr. Vanovskyi is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Vanovskyi requests immediate release from custody. Dkt. 1 at 19. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Mr. Vanovskyi's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a) and its regulations. This is because it is not Mr. Vanovskyi's detention itself that is unlawful; it is his detention *without a bond hearing* that violates the law. Thus, the remedy appropriate to the violation is to provide him with that bond hearing.

## IV.     Conclusion

The Court grants the petition to the extent that no later than **5:00 p.m. on May 6, 2026**, Respondents must either: (1) provide Mr. Vanovskyi with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Vanovskyi from custody, under reasonable conditions of supervision. No later than **12:00 p.m. on May 8, 2026**, Respondents must file documentation certifying that they have provided Mr. Vanovskyi with a bond hearing or released him from detention. The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 04/30/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel